# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DANIEL L. ARNOLD,**

    **Plaintiff,**

    **v.**                                                     **Case No. 18-CV-43**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Daniel L. Arnold seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Arnold filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income alleging disability beginning on January 28, 2012 due to congestive heart failure, diabetes, chronic obstructive pulmonary disease ("COPD"), hernia, sleep apnea, and obesity. (Tr. 267.) The claim was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on August 22, 2016. (Tr. 40.) Arnold testified at the hearing, as did John Reiser, a vocational expert ("VE"). (Tr. 41.)

In a written decision issued September 27, 2016, the ALJ found that Arnold had the severe impairments of: a history of congestive heart failure, hypertension, COPD, asthma, obstructive sleep apnea, obesity, diabetes, lumbar degenerative disc disease, carpal tunnel syndrome, osteoarthritis in both knees, and an anxiety disorder. (Tr. 24.) The ALJ found that Arnold did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 25.) The ALJ found Arnold had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: alternate between standing for up to three minutes after every hour of sitting; frequent handling and fingering on the right; no climbing of ladders, ropes, and scaffolds; frequent balancing; occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; occasional exposure to dust, odors, fumes, and pulmonary irritants; no exposure to unprotected heights and moving mechanical parts; and occasional interaction with coworkers, supervisors, and the public. (Tr. 27.)

Although the ALJ found Arnold was unable to perform his past relevant work, the ALJ found that based on Arnold's age, education, work experience, and RFC, that jobs existed in significant numbers in the national economy that he could perform. (Tr. 33.) As such, the ALJ found Arnold was not disabled from January 28, 2012 through the date of the decision (September 27, 2016). (Tr. 34.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. (Tr. 1-5.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*,

662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

Arnold alleges the ALJ erred by failing to obtain sufficient testimony from the VE regarding Arnold's need to use a nebulizer while at work. Arnold further alleges that the ALJ's questioning of the VE regarding nebulizer use was misleading and deprived Arnold of the opportunity to ask additional questions to the VE regarding nebulizer use.

The record supports Arnold's contention that he uses a nebulizer to treat symptoms of wheezing and shortness of breath associated with asthma. (Tr. 774, 784, 788, 796, 801, 803, 813,

816.) Although some of the records simply instruct nebulizer use three to four times a day "as needed," (Tr. 759, 775, 789, 801, 814), others explicitly state that the nebulizer should be used "every 6 (six) hours as needed" (Tr. 784, 796, 817). These records are not necessarily incompatible—in a twenty–four hour period, if nebulizer treatments are spaced six hours apart, this allows for up to four treatments. Arnold testified that he uses his nebulizer three times a day, sometimes four, depending on symptoms. (Tr. 55.) He testified that he typically uses his nebulizer as soon as he gets up (Tr. 54) and a nebulizer treatment lasts twenty minutes (Tr. 55). Although Arnold's testimony is a bit unclear, it appears he may have testified that he performed an additional nebulizer treatment "two or three hours down the road" after doing his first morning treatment. (Tr. 54.)

The ALJ credited and accepted Arnold's need for nebulizer treatments. The ALJ noted Arnold's testimony that his symptoms require periodic use of a nebulizer during the day, specifically three or four times a day for twenty minutes each. (Tr. 28.) The ALJ found, however, that Arnold's need for nebulizer treatments did not preclude him from sedentary work. The ALJ stated:

> Although subsequent records note asthma symptoms for which the claimant used albuterol, there is little evidence that the claimant's need for a nebulizer medication precluded him from sedentary work activity as alleged by the claimant since records indicate that he would need to use it only once during a given shift, which could be accommodated by a typical break and lunch schedule. For example, the claimant's treating doctor's recommendation states he may use his nebulizer three to four times a day every six hours as needed (Exhibit 11F/48; Exhibit 12F/24). Such a treatment regimen would ultimately result in the claimant using this 20-minute treatment during a lunch break.

(Tr. 31.) Although the ALJ clearly tried to account for Arnold's nebulizer use in crafting his RFC, he falls slightly short of the mark. Arnold argues, citing cases from outside this circuit, that nebulizer use is inconsistent with unskilled work and that no federal or state law requires employers to provide break or meal periods. (Pl.'s Br. at 3–4, Docket # 17.) But other courts in this circuit have not found nebulizer use generally inconsistent with unskilled work. *See Konoloff v. Colvin*, No. 14-CV-338, 2016

-4-

WL 1237884 (N.D. Ind. Mar. 30, 2016); *Carroll v. Barnhart*, 291 F. Supp. 2d 783 (N.D. Ill. 2003). Further, the Social Security regulations clearly contemplate scheduled breaks and a lunch period for sedentary work, *see* Social Security Ruling 96-9p, and the Program Operations Manual System ("POMS"), which serves as the SSA's instruction manual for employees who make initial disability determinations, *see* https://secure.ssa.gov/poms.nsf/home!readform (last visited Nov. 15, 2018), instructs the ALJs in conducting the RFC assessment to "[c]onsider an 8-hour workday and a 5 day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating the ability to sustain work-related functions." POMS DI 24510.005(C)(2)(b).

Arnold further argues, however, that the RFC does not account for the fact that his nebulizer treatments may not always coincide with a scheduled work break. (Pl.'s Br. at 5.) The Commissioner responds that Arnold's argument is illogical because "were his condition to worsen and require scheduled nebulizer treatments, he might *not* be disabled." (Commissioner's Br. at 7, Docket # 20.) But the issue is that Arnold must use his nebulizer "as needed" for wheezing and shortness of breath, within the confines of not more than four times a day with treatments spaced six hours apart. Thus, if, as Arnold testified, he uses his nebulizer immediately upon waking, but he does not experience symptoms again until after his lunch break (likely more than six hours later), Arnold would not have time to perform a second nebulizer treatment while at work.

While the ALJ correctly assumes Arnold would only need to use his nebulizer once in a given shift (again, assuming Arnold uses his nebulizer upon waking and treatments are spaced every six hours), the ALJ incorrectly assumes that the nebulizer treatment could be performed during lunch. Arnold's treatments are not regimented to every six hours; rather, they are "as needed," within the confines of three to four treatments a day, at least six hours apart. The ALJ was likely considering this issue when he asked the VE about an individual requiring an additional twenty minute break

-5-

beyond the scheduled breaks. (Tr. 91-92.) The VE stated that the jobs he testified to were "highly regimented" and would not allow additional breaks beyond scheduled breaks. (Tr. 92.) The VE testified that requiring an additional twenty minute break beyond scheduled breaks would be work preclusive. (*Id.*) Thus, it appears that the jobs the VE testified Arnold could perform would not allow the flexibility to conduct nebulizer treatments on an "as needed" basis when symptoms arise. For this reason, the case must be remanded for the ALJ to ask the VE whether jobs exist that Arnold could perform that allow the flexibility to perform nebulizer treatments on an as needed basis. Further, although one can assume that when the ALJ speaks of "scheduled breaks" he means two fifteen minute breaks and one thirty minute lunch period, the ALJ should make this explicit to the VE when questioning him on remand to ensure the break period accommodates Arnold's twenty minute nebulizer treatment.

## CONCLUSION

Arnold argues the ALJ erred in failing to obtain VE testimony regarding Arnold's need to use a nebulizer while at work. I agree that the ALJ erred in this regard and will remand the case to obtain additional VE testimony consistent with this decision.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 26th day of November, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge